**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DUSTIN PERKINS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1312-CR-1001 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-1206-MR-40338

June 17, 2014

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Dustin Perkins appeals his convictions for Count I Murder,[1] a felony, and Count II Robbery,[2] a class C felony. More particularly, Perkins argues that the trial court erred when it denied his motion for a mistrial without providing him an opportunity to investigate or present evidence at a hearing in support of his claim of jury misconduct. As Indiana Trial Rule 59(A) required Perkins to file a motion to correct error in order to preserve his claim, he has waived this claim. However, even if this Court were to treat his motion for a mistrial as a motion to correct error, the basis for Perkins's request for a mistrial are impermissible grounds to impeach jury verdicts under Evidence Rule 606(B). Therefore, we affirm the judgment of the trial court.

## FACTS

On June 9, 2012, Perkins bought one-half ounce of marijuana for $155 from Carlton Brown, whom he had been friends with for two to three years. About forty-five minutes later, Perkins called Brown and told him that the marijuana was of poor quality. Brown agreed to refund Perkins his money and told Perkins to meet him at Waterstone Apartments in Marion County.

Brown waited for Perkins for over an hour, during which time Brown's two nephews, Kendrick and Frederick Vaulx, appeared in their black Crown Victoria. Brown got into the Vaulxs' vehicle and called Perkins to ask him if he was coming. Perkins arrived about fifteen minutes later in his Pontiac G6, and he was accompanied by two

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. § 35-42-5-1(2).

friends, Jerry East and Rafael Walker. Brown then got into the G6 to speak with Perkins and discovered that Perkins, East, and Walker were armed. Brown asked Perkins to give him a ride to the Lawrence Glen Apartments, and Perkins agreed. On the way, Brown and Perkins spoke normally, and Brown refunded Perkins his money. The Vaulx brothers followed the G6 to the Lawrence Glen Apartments.

When they arrived at the Lawrence Glen Apartments, the two vehicles parked near one another by the office, where a surveillance camera recorded the encounter. Perkins and Brown exited the G6. Brown's friends, Bryant Glenn, Reginald Graves, and Marvin Allen, who were expecting Brown, then walked towards the vehicles. Brown signaled to them to stop. Neither Brown's friends nor his nephews were armed.

At this point, Perkins began yelling at Brown, screaming "Ya'll trying to play me." Tr. p.103-104. Perkins then pulled out a handgun, telling East and Walker, who were still in the G6, to "hold them down." Id. at 516. Walker, who was in possession of a shotgun, exited the G6 and ordered the Vaulx brothers to exit the Crown Victoria. East also exited the G6. Perkins waved his handgun around and ordered everyone to stand by the Crown Victoria; he asked everyone what they had in their pockets and searched each individual's pockets. East told everyone to "be cool." Id. at 517. When Perkins reached Frederick, he took some money out of Frederick's pocket; Frederick became angry and stared him down. Perkins told Frederick, "I should burn you." Id. at 108. Brown then stepped in, told Perkins that it was "over," and gave him the cash he was carrying. Id. at

3

470. Perkins, Walker, and East got into the G6, and Frederick entered the passenger side of the Crown Victoria. Kendrick approached the driver's side.

Perkins suddenly became enraged and shouted, "[t]hey think I'm playing with them," and "[y]ou know how I get down from the west side." Id. at 111, 474. Perkins then began firing his weapon at the Crown Victoria. Kendrick ran toward the apartment complex, and Walker also began shooting at the vehicle. Frederick was hit in the head by a bullet fired by Walker.

When the shooting stopped, the G6 drove away. Brown attempted to help Frederick, who lay dying on the ground, but then left on foot to seek revenge against Perkins. Kendrick found Frederick and began to scream for help.

Perkins and East were found with the G6 about an hour later. Brown and Kendrick positively identified Perkins, East, and Walker. Several bullets and casings were found at the scene. Frederick was placed on life support at Methodist Hospital but died the following day from the single gunshot wound to his head.

On June 14, 2012, Perkins was charged with murder, felony murder, and class A felony robbery. Following a three-day jury trial that commenced on October 21, 2013, the jury found Perkins guilty as charged. At the November 1, 2013 sentencing hearing, the trial court merged the felony murder and murder convictions and reduced the class A felony robbery conviction to class C felony robbery. The trial court sentenced Perkins to sixty years for murder and to six years for robbery. The sentences were to run concurrently.

4

On November, 22, 2013, Perkins filed a motion for a mistrial based on juror misconduct, alleging that the judgment of conviction was contrary to law because the verdicts were not unanimous as the dissenting jurors' votes were ignored and these jurors were intimidated into remaining quiet during the polling process. Perkins filed the motion after Juror A contacted defense counsel with information about the alleged juror misconduct. The trial court denied the motion, stating that all the jurors, including Juror A, had been polled as to whether the verdicts read by the trial court were the juror's individual verdict, and all had responded in the affirmative. Moreover, the trial court noted that Indiana Evidence Rule 606(b) prohibits impeachment of a jury verdict except in limited circumstances and determined that the basis for Perkins's request did not fall under any of those exceptions.

Perkins now appeals.

## DISCUSSION AND DECISION

Perkins argues that the trial court erred by denying his motion for a mistrial based on alleged jury misconduct. Initially, we observe that Indiana Trial Rule 59(A) reads as follows:

> (A) Motion to correct error--When mandatory. A Motion to Correct Error is not a prerequisite for appeal, except when a party seeks to address:
>
> (1) Newly discovered material evidence, including alleged jury misconduct, capable of production within thirty (30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial; or
>
> (2) A claim that a jury verdict is excessive or inadequate.

5

All other issues and grounds for appeal appropriately preserved during trial may be initially addressed in the appellate brief.

Perkins did not file a motion to correct error; he filed a motion for a mistrial. Therefore, Perkins has waived the issue of juror misconduct by failing to file a motion to correct error. See Mitchell v. State, 453 N.E.2d 395, 397 (Ind. 1983) (holding that the defendant waived the issue of juror misconduct when he failed to set out the alleged error in his motion to correct error).

Waiver notwithstanding, even if this Court were to treat Perkins's motion for a mistrial as a motion to correct error, the trial court did not err in denying the motion. In general, a trial court has broad discretion to determine whether to grant or deny a motion to correct error. Volunteers of Am. v. Premier Auto Acceptance Corp., 755 N.E.2d 656, 658 (Ind. Ct. App. 2001). We will reverse only for an abuse of that discretion. Id. An abuse of discretion occurs if the trial court's decision was against the logic and effect of the facts and circumstances before the court or if the court misapplied the law. Id. The trial court's decision comes to us cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. Id. In making our determination, we may neither reweigh the evidence nor judge the credibility of witnesses. Id. Instead, we look at the record to determine if: (a) the trial court abused its judicial discretion; (b) a flagrant injustice has been done to the appellant; or (c) a very strong case for relief from the trial court's [order] ... has been made by the appellant. Id.

6

Here, the trial court denied Perkins's motion for a mistrial because it found that "Indiana Evidence Rule 606(B) prohibits impeachment of the verdict except under certain limited circumstances," and "the affidavit of [Juror A] does not fall under one of the exceptions allowed by Rule 606(b)." Appellant's App. p. 273.

It has long been established in Indiana that a jury's verdict may not be impeached by the testimony of those who returned it. Ward v. St. Mary Med. Ctr. Of Gary, 658 N.E.2d 893, 893 (Ind. 1995). The policy reasons most often cited in support of this rule are that (1) there would be no reasonable end to litigation, (2) jurors would be harassed by both sides of litigation, and (3) an unsettled state of affairs would result. Id. Indiana Evidence Rule 606(b) codifies this rule, but includes four exceptions:

(b) During an Inquiry into the Validity of a Verdict or Indictment.

(1) Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) Exceptions. A juror may testify about whether:

(A) any juror's drug or alcohol use;
(B) extraneous prejudicial information was improperly brought to the jury's attention;
(C) an outside influence was improperly brought to bear on any juror; or
(D) a mistake was made in entering the verdict on the verdict form.

7

Here, Perkins alleges that the verdicts underlying his convictions were not unanimous and claims that three of the twelve jurors were intimidated into remaining silent during polling. Johnson v. State, 700 N.E.2d 480 (Ind. Ct. App. 1998), is instructive in this case. In Johnson, a juror contacted defense counsel after Johnson was convicted and claimed that five other jurors had pressured her into returning a guilty verdict. Id. at 480. Johnson filed a motion to correct error, alleging that the verdict was the result of undue influence. Id. The Johnson Court held that undue influence from within the jury did not fall under an exception to Evidence Rule 606(b) and that "[j]urors may not decide, in hindsight, that the weighing process overcame their spirit or will." Id. at 481.

Here, Perkins's argument does not fall into any of the exceptions contemplated by Evidence Rule 606(b), as he argues that some jurors overcame the will of others. Perkins's desire to investigate alleged coercion and intimidation within a jury is not permitted under Evidence Rule 606(b)(1) as it concerns "the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Accordingly, this argument fails.

The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.

8